**E-Filed 8/16/06**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CLARUS TRANSPHASE SCIENTIFIC, INC., <br><br> Plaintiff, <br><br> v. <br><br> Q-RAY, INC., et al., <br><br> Defendants. | Case Number C 06-3450 JF (RS) <br><br> ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; AND (2) GRANTING MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS <br><br> [Doc. No. 7] |

Defendants Q-Ray, Inc. ("Q-Ray"), QT, Inc. ("QT"), Bio-Ray, Inc. ("Bio-Ray"), Bio-Metal, Inc. ("Bio-Metal"), Que Te "Andrew" Park ("Park") and Jung Joo Park ("Jung Joo Park") move to dismiss the complaint of Plaintiff Clarus Transphase Scientific, Inc. ("Clarus") for lack of personal jurisdiction and improper venue. Alternatively, Defendants move to transfer venue to the Northern District of Illinois. The Court has considered the parties' briefing as well as the oral arguments presented at the hearing on August 11, 2006. For the reasons discussed below, the motion to dismiss will be granted as to Defendants Q-Ray, Bio-Ray, Bio-Metal, Jung Joo Park and Andrew Park, and denied as to QT. Because allowing the action to proceed in a forum in

which all defendants are subject to personal jurisdiction will serve the interests of judicial economy, the motion to transfer venue will be granted.

## I. BACKGROUND

Clarus owns trademark and trade dress rights in the "Q-Link" ionized pendant, a jewelry item that is worn around the neck. Clarus filed the instant action on May 26, 2006, alleging that Park, its former licensee, has begun selling a "knock-off" pendant called the "Q-Ray" ionized pendant through his company QT.[1] Clarus asserts trade dress and related claims against Park, his wife Jung Joo Park, QT, and other corporate entities.

All of the corporate defendants were incorporated in Illinois and have their principal places of business there. The Parks are residents of Illinois. On July 6, 2006, Defendants filed a joint motion to dismiss the instant action for lack of personal jurisdiction and improper venue or, alternatively, to transfer venue to the Northern District of Illinois.[2]

On July 21, 2006, Clarus filed opposition to Defendants' motion, conceding lack of jurisdiction as to Q-Ray, Bio-Ray, Bio-Metal and Jung Joo Park, but asserting that personal jurisdiction does exist with respect to QT and Park. The Court granted leave to conduct limited discovery into the question of personal jurisdiction and set the motion for hearing on August 11, 2006. Both sides filed supplemental briefs on August 9, 2006.

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**A.    Legal Standard**

A district court sitting in California may exercise personal jurisdiction over a non-resident defendant if the defendant has "minimum contacts" with California such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977); *see also International*

---

[1] The "complaint" electronically filed on the Court's docket consists only of exhibits; it appears that the substantive complaint was erroneously omitted. Plaintiffs are directed to cure this filing error as soon as is practicable.

[2] Clarus filed a motion for preliminary injunction on the following day, July 7, 2006. That motion has been set for hearing on September 8, 2006.

1  *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

2  If the nonresident defendant's contacts with California are "substantial" or "continuous
3  and systematic," the defendant is subject to "general jurisdiction" in California even if the cause
4  of action is not related to the defendant's activities within the state. *Data Disc*, 557 F.2d at 1287.
5  "The standard for establishing general jurisdiction is fairly high, and requires that the defendant's
6  contacts be of the sort that approximate physical presence." *Bancroft & Master, Inc. v. August
7  Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal quotation marks and citations omitted).
8  "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages
9  in business in the state, serves the state's markets, designates an agent for service of process,
10 holds a license, or is incorporated there." *Id.*

11 If the defendant's activities within the state are not so pervasive as to subject it to general
12 jurisdiction, it may be subject to "specific jurisdiction" if the cause of action is directly related to
13 those activities. *Data Disc*, 557 F.2d at 1287. The Ninth Circuit has articulated a three-part test
14 to determine when it is appropriate to exercise specific jurisdiction over a particular defendant:
15 (1) the nonresident defendant has performed some act by which he purposefully avails himself of
16 the privilege of conducting activities in the forum, thereby invoking the benefits and protections
17 of its laws; (2) the claim arises out of or results from the defendant's forum-related activities; and
18 (3) exercise of jurisdiction is reasonable. *Id.*

19 When a nonresident defendant raises a challenge to personal jurisdiction, the plaintiff
20 bears the burden of showing that jurisdiction is proper. *Decker Coal Co. v. Commonwealth
21 Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986). In the context of a motion to dismiss based upon
22 pleadings and affidavits, the plaintiff may meet this burden by making a *prima facie* showing of
23 personal jurisdiction. *Metropolitan Life Ins. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990);
24 *Data Disc*, 557 F.2d at 1285. In determining whether the plaintiff has made a *prima facie*
25 showing, documents submitted by the plaintiff are construed in the light most favorable to the
26 plaintiff and all doubts are resolved in the plaintiff's favor. *Metropolitan Life*, 912 F.2d at 1064
27 n.1.

28

**B.     QT**

Clarus introduces evidence that QT maintains an interactive website selling its jewelry products (primarily Q-Ray ionized bracelets) in a "virtual store" that is accessible to California residents; advertises nationally on television and in magazines; has sent approximately 125,000 direct marketing emails to California residents in 2006; has sent approximately 62,000 direct mail solicitations to California residents in 2006; and has sent more than 500 Q-Ray catalogs into California. Clarus also introduces evidence that QT uses a California based company, Euro RSCG of Carlsbad, in relation to its nationally televised infomercials; that QT has had sales representatives in California in the past; and that QT maintained a "fulfillment" center in California for part of 2000 and filed a California tax return in 2000. Finally, Clarus introduces evidence that QT has more than 100,000 retail customers in California and more than 100 wholesale customers in California. QT's retail sales into California exceed $4 million for the last three years; its wholesale sales into California total approximately $100,000. Based upon this evidence, the Court has no difficulty finding that it has general jurisdiction over QT.

QT nonetheless cites *Bancroft & Master* for the proposition that general jurisdiction is not present. In that case, the California owner of the Internet domain name "masters.com" brought action against a Georgia golf club that owned the "Masters" trademark, seeking declaratory judgment of non-infringement of the mark and other relief. The Ninth Circuit held that the golf club's contacts with California were insufficient to establish general jurisdiction. However, the court's finding was based upon its conclusion that the golf club's website was passive and that the golf club did not target any advertising toward California. The court concluded that the golf club's "occasional, unsolicited sales of tournament tickets and merchandise to California residents are insufficient to create general jurisdiction." *Bancroft & Master*, 223 F.3d at 1086. This reasoning is inapplicable in the instant case. Clarus has presented evidence that QT maintains an active website, aggressively targets advertising toward California, and sells products worth hundreds of thousands of dollars to California residents California annually.

**C.     Park**

"Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert personal jurisdiction over the person." *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *see also Colt Studio, Inc. v. Badpuppy Enterprise*, 75 F.Supp.2d 1104, 1111 (C.D. Cal. 1999) ("The mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well"). "For jurisdictional purposes, the acts of corporate officers and directors in their official capacities are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individuals." *Colt Studio*, 75 F.Supp.2d at 1111. However, "[i]f the corporation is the 'alter ego' of the individual defendants so as to justify disregard of the corporate entity, then a finding of personal jurisdiction over the corporation will support a finding of personal jurisdiction over the individuals." *Id.*; *see also Davis*, 885 F.2d at 520. Alternatively, personal jurisdiction over the individual may be found based upon "the individual's control of, and direct participation in the alleged activities" of the corporation. *Wolf Designs, Inc. v. DHR & Co.*, 322 F.Supp.2d 1065 (C.D. Cal. 2004); *see also Smith + Noble LLC v. South Jersey Vinyl, Inc.*, 47 U.S.P.Q.2d 1944, 1946-47 (1998).

Clarus argues that Park is subject to the specific jurisdiction of this Court because Park controlled and directly participated in the activities that give rise to jurisdiction over QT. As discussed above, QT is subject to the *general jurisdiction* of this Court based upon its substantial and continuous contacts with California unrelated to the Q-Ray ionized pendant at issue in this lawsuit. Clarus does not cite any authority for the proposition that the Court can look through these general activities of QT to find general jurisdiction over Park. Instead, Clarus argues that in addition to being subject to general jurisdiction, QT is subject to the *specific jurisdiction* of this Court as a result of QT's contacts with California *relating to the Q-Ray ionized pendant*, and that the Court can look through *these* contacts to find specific jurisdiction over Park based upon his control and participation.

Although as discussed above this Court's general jurisdiction over QT is not a difficult

one, the question of whether QT also is subject to the specific jurisdiction of this Court is very close. As noted above, in attempting to determine the existence of specific jurisdiction over a particular defendant the Court asks whether: (1) the nonresident defendant has performed some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction is reasonable. *See Data Disc*, 557 F.2d at 1287. While there is evidence that QT advertises its Q-Ray *bracelet* products extensively in California, the record is quite unclear as to how extensively QT advertises the Q-Ray *pendant* in California. While QT has sold its line of ionized bracelets for years, it did not begin selling the ionized pendant until approximately the same time the instant lawsuit was filed on May 26, 2006. *See* Decl. of Charles Park, ¶ 11 (stating that the Q-Ray ionized pendant was not offered for sale until June 2006). QT had not sold any Q-Ray ionized pendants in California at the time the suit was filed. There is evidence that QT subsequently made a single sale of four pendants to a California resident after the suit was filed,[3] and that three other California residents ordered pendants that QT has not shipped because they are back-ordered.

The Court has serious reservations as to whether QT's advertising and sales of the Q-Ray ionized pendant in California are sufficient to meet the "purposeful availment" prong. Moreover, there is little or no evidence that Clarus' claims arise out of QT's advertising and sales of the pendant *in California*, because the only California sales appearing in the record occurred *after* Clarus filed this action. However, even assuming without deciding that the first two prongs of the test are met, the Court concludes that exercise of personal jurisdiction over Park would be unreasonable. While there is evidence that Park, as the CEO and sole shareholder of QT, ultimately approved the design and marketing of the subject pendant, there is no evidence that he

---

[3] Clarus' counsel ordered an additional pendant from QT as well. A plaintiff cannot manufacture personal jurisdiction in a trademark case by purchasing the accused product in the forum state. *Millennium Enterprises, Inc. v. Millennium Music LP*, 33 F.Supp.2d 907, 911 (D. Ro. 1999).

1  had any personal involvement in the advertising of that pendant (if any) in California, or that he
2  was involved in the single California sale that has occurred. Under these circumstances, given
3  Park's residency in Illinois and lack of any meaningful contacts with California, the Court
4  declines to assert personal jurisdiction over Park.

### III. MOTION TO DISMISS FOR IMPROPER VENUE

A civil action in which subject matter jurisdiction is based in part upon a federal question may be "brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b). For purposes of venue, a corporate defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c).

Defendants assert that venue is improper in California because Defendants are not subject to personal jurisdiction in California. As discussed above, the Court concludes that jurisdiction is proper with respect to QT. Moreover, Defendants do not address subsection (2) of § 1391(b), providing that venue is proper in a judicial district in which a substantial part of the events giving rise to the claim occurred. Plaintiffs assert sales of the alleged knock-off pendant in California. Accordingly, Defendants have failed to demonstrate that venue in this district is improper.

### IV. MOTION TO TRANSFER

Defendants' alternative motion to transfer venue to the Northern District of Illinois is governed by 28 U.S.C. § 1404(a), which provides as follows:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). This action might have been brought in the Northern District of Illinois because all defendants reside in Illinois. *See* 28 U.S.C. § 1391(b).

Ordinarily, a plaintiff's choice of forum is accorded substantial weight, and courts will not grant a motion under § 1404(a) unless the "convenience" and "justice" factors tip strongly in

favor of transfer. *Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086, 1092 (N.D. Cal. 2002); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). However, the Court may disregard the plaintiff's choice of forum where the plaintiff's suit is the result of forum-shopping. *Alltrade. Inc., v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991).

A motion for transfer pursuant to § 1404(a) lies within the discretion of the Court. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The decision whether to grant such a motion turns on the facts of the particular case. *Id*. The factors to be weighed in deciding a motion for transfer include: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) that the relevant public policy of the forum state, if any. *Id*. at 498-99.

Many of these factors are inapplicable to the instant case. Clearly, Clarus' choice of forum must be accorded significant weight. However, balanced against that choice is the Court's determination that it cannot exercise personal jurisdiction over Park. Clarus' counsel made clear at the hearing that Clarus wishes to pursue this action against both QT *and* Park. Because Park cannot be sued in California, and because all the documentary evidence pertaining to the development, marketing and sales of the Q-Ray ionized pendant are located in Illinois, the Court concludes that Illinois is a superior forum for litigation of this action and that transfer to that forum will best serve the interests of judicial economy. Accordingly, the Court will grant Defendants' motion to transfer venue to the Northern District of Illinois.

## V. ORDER

(1) Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED as to Defendants Q-Ray, Bio-Ray, Bio-Metal, Jung Joo Park and Andrew Park, and DENIED as to Defendant QT;

(2) Defendants' motion to dismiss for improper venue is DENIED;

(3) Defendants' motion to transfer venue to the Northern District of Illinois is GRANTED; and

(4) The Clerk of the Court SHALL TRANSMIT the file to the Northern District of Illinois and SHALL CLOSE this Court's file in the action.

DATED: 8/16/06

_____
JEREMY FOGEL
United States District Judge

This Order was served on the following persons:

John C. Gorman       jgorman@gormanmiller.com

Craig Alan Hansen    chansen@gormanmiller.com

Michael J. Hoisington    mhoisington@higgslaw.com,

Ross Kimbarovsky    rossk@uhlaw.com

Charles F. Reidelbach, Jr.    reidelbach@higgslaw.com,

Phillip Samouris    samouris@higgslaw.com, moklestadn@higgslaw.com

Richard Henry Tilghman , IV    rhtilghman@uhlaw.com

Case No. C 06-3450 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ETC.
(JFLC2)